CELINDA A. FULTON, RESPONDENT, *v.* SOLON M. N. WHITNEY, JAMES F. TROTT, DEXTER R. JERAULD AND OTHERS, APPELLANTS.

*Trustee ex maleficio — liability of — Purchase of trust property by trustee to the injury of his trust — Final accounting before surrogate.*

A trustee who buys in property under an incumbrance prior to that held by him as trustee, and at a price below its real value, is always considered as doing it for the use and benefit of his *cestui que trust.*

It makes no difference whether the subject of the purchase is itself trust property, or whether such purchase has the necessary effect of injuring other trust property.

The final accounting by executors or trustees before the surrogate, is not a bar to an action brought for the enforcement of a trust of which the executors or trustees become trustees *ex maleficio*.

APPEAL from a judgment in favor of the plaintiff, entered on the decision of the court at Special Term.

Action to charge defendants Solon M. N. Whitney, James F. Trott and Dexter R. Jerauld, as trustees in equity for the plaintiff.

The facts are stated in the following opinion of LAMONT, J., delivered at the Special Term:

LAMONT, J.:

By his will, Parkhurst Whitney bequeathed to his executors, Solon M. N. Whitney and James F. Trott, a special fund, consisting of a mortgage made to him by Messrs. Whitney, Jerauld and Trott, and amounting to $19,171.96, of which, after the payments of debts not otherwise provided for, $12,000 and interest were in the next place to be paid by his executors to three of his grandchildren, Olympia, Helen and Celinda Kowalewski, the last of whom is the plaintiff in this action, now the wife of Robert O. Fulton. The residue of such trust fund was then to go to other beneficiaries. By the death of said Olympia and Helen, leaving no father, mother or brother, Celinda, the plaintiff, their only surviving sister, became their sole heir at law and next of kin.

By a residuary clause, the fifteenth in the will, the testator devised to his grandchildren, who were ten in number, a parcel of real estate at Niagara Falls, which is the principal subject of the present action. The testator had purchased this land, in 1859, for $10,000, for which he gave his bond with a mortgage on the premises. He died in 1862 and his will was proved and recorded as a will of personal and real estate in the Surrogate's Court of Niagara county, and letters testamentary were taken out by the executors. On the foreclosure of the mortgage the premises were sold under judgment in this court, and on the 9th day of January, 1867, the executors and the defendant Dexter R. Jerauld became the pur-

chasers at sheriff's sale for $5,000, one-half their real value. Before this time Olympia and Helen had died, and at the time of the sale the plaintiff was under twenty-one years of age.

Solon M. N. Whitney was, at the time of the sale, the general guardian of the plaintiff and the administrator of the estates of both her deceased sisters.

The purchasers, Whitney, Jerauld and Trott, were brothers-in-law and partners in business, conducting the Cataract House, a hotel at Niagara Falls. They were all equally and fully acquainted with the equities of the plaintiff.

By the provisions of the will the bequest of $12,000, bequeathed to the Kowalewski sisters, was directed to be paid from no other part of the testator's estate, except from the proceeds of said mortgage set apart for the purpose. The testator's debts had been paid before the sheriff's sale, except the bond and mortgage given by the testator for the land in question; and in order to pay said debts the executors had drawn considerably upon this trust fund, so that it was manifest when the sale took place that any deficiency necessary to satisfy the bond, after the mortgaged premises had been appropriated, must be paid out of the trust fund in question, or, in other words, wholly out of the moneys coming to the plaintiff therefrom. The deficiency was $6,577.48. If the land had sold for $10,000, its real value, the deficiency would have been but $1,577.48. The plaintiff thereby lost $5,000, because the land did not bring what it was worth; and the purchasers were the two executors, one of whom was also her general guardian and the administrator of her two sisters, to whom she was next of kin, and the third purchaser the business partner of the other two. It was the duty of the executors having this trust fund in charge to make it most available to the plaintiff. It was the duty of the administrator of the two deceased sisters to save this trust estate, their whole personal property substantially, for the benefit of the plaintiff, their next of kin. It was the duty of the general guardian of the plaintiff, who had a duty to perform to the plaintiff, both as to her real and personal estate, to protect it from diminution and spoliation.

The two executors, in that character controlling this special trust fund, and one of them in three other characters, twice as administrator and once as plaintiff's general guardian, stood in that relation

of trust and confidence toward the plaintiff and her property under their charge, and in her infancy, that the law will not tolerate their speculation at her expense. The testator's bounty cannot thus be suffered to be sacrificed to the self-interest of the persons appointed to protect it.

The purchaser Jerauld, though neither an executor, administrator nor guardian, acted with ample notice; and his situation would be the same if he had had no notice of the plaintiff's equities, for it has been laid down that one purchasing jointly with a trustee has no better equity than the trustee himself. (Tiff. & Bull. on Trustees, 151, citing *Paul* v. *Squibb*, 12 Penn., 296; *Mitchum* v. *Mitchum*, 3 Dana, 260.) And, again, that a partner in business of a person holding such relations of trust and confidence is equally disabled. (*Ex parte Burnell*, 7 Jur., 116; approved in *Gardner* v. *Ogden*, 22 N. Y., 327.) Both Whitney and Trott had duties to perform inconsistent with their characters as purchasers. Their duty to plaintiff was that the land should sell for the highest possible price, that the deficiency might be to the smallest possible amount. Their interest as purchasers was that the land should sell at the lowest figure, and the deficiency be increased to the greatest possible extent. Their pecuniary interest was thus put in hostility to their duty to the *cestui que trust*. The rule of equity that condemns such transactions is of universal application to all persons standing in such relation, and it is not necessary to prove fraud in order to enable a party to have the benefit of this equity. (*Case* v. *Carroll*, 35 N. Y., 388, 389.) A trustee who buys in the trust property under a prior incumbrance, and at a price below its real value, is always considered as doing it for the use or benefit of his *cestui que trust*. (*Slade* v. *Van Vetchen*, 11 Paige, 26, 27.) The latter may treat the purchase as for his benefit, whether the sale was public or private, and for a *bona fide* price or otherwise. (*Davoue* v. *Fanning*, 2 Johns. Ch., 257–270; *New York Central Ins. Co.* v. *National Protection Ins. Co.*, 14 N. Y., 91; *Jewett* v. *Miller*, 10 id., 402; *Gallatian* v. *Cunningham*, 8 Cow., 376–381.) It makes no difference whether the subject of the purchase is itself trust property, or whether such purchase has the necessary effect of injuring other trust property. (*Van Epps* v. *Van Epps*, 9 Paige, 241.) No trustee can act for his own benefit and advantage to the

injury and ruin of those he is bound to protect. It is.the breach of duty that raises the equity for relief. (*Colburn* v. *Morton*, 3 Keyes, 305.) That the clause in the judgment of foreclosure and sale, allowing either or any of the parties to the action to purchase at the sale, does not affect the plaintiff's equities, was a point ruled in *Torrey* v. *Bank of Orleans* (9 Paige, 661; affirmed in the Court of Errors, 7 Hill, 260). In *York Building Association* v. *Mackenzie*, in the House of Lords, of which the history is given and the authority approved in *Gardner* v. *Ogden* (22 N. Y., 344), there had been a sale, and the sale had been confirmed by the court (page 345; again so stated, 3 Keyes, 299), which, notwithstanding, was afterward set aside for reasons holding good in the present case. The sale had also been confirmed by the court to the guardian *ad litem*, in *Gallatian* v. *Cunningham* (8 Cow., 376), but the Court of Errors would not allow it to stand.

The decree of foreclosure contained a like clause in *Conger* v. *Ring* (11 Barb., 356–359), where an executor was the purchaser, but the court ordered a resale unless the executor paid the debt prejudiced by the sale. In *Colburn* v. *Morton* (3 Keyes, 308) the assignees were charged with the difference between the amount paid by them on the purchase of the property and its actual value.

The final accounting before the surrogate is no bar to the plaintiff's rights in this action. Treated as a settlement of the accounts of executors, it is only so far final as declared by statute. (2 R. S., 94, § 65.) The following section (66) amended 1866, chapter 115, relates to accounts of trustees created by a last will or testament, whereby such trustee may settle his accounts before the surrogate, in the manner provided by law for the final settlement of the accounts of executors and administrators, upon citation; and the decree of the surrogate, on the final settlement of an account provided for in the section, has the same force and effect as the decree or judgment of any other court of competent jurisdiction on the final settlement of such accounts of the matters relating to such trust which shall have been embraced in such accounts or litigated or determined on such settlement thereof. The matters in this action were not embraced, nor so much as mentioned in the accounts before the surrogate, nor litigated nor determined in that accounting. The claim here is, that the purchasers of the real

estate became trustees by virtue of the purchase, not trustees created by the will. They became trustees *ex maleficio.*

One of those purchasers was not before the Surrogate's Court, nor had the surrogate any means to obtain jurisdiction of him.

The original final account of the executors was amended by leave of the surrogate, but the amended account embraced nothing new; the executors merely called themselves executors and trustees. All the accounts rendered were strictly executorial, relating exclusively to the administration of the personal estate, which it is an executor's duty to administer. They accounted for nothing but what their duty as executors required them to do.

The trustee created by a will, intended by the statute, is not such a trustee as an executor is, but such a trustee as an executor is not. The law had already amply provided for the accounting of executors. By the will itself they are simply executors, charged only with the personal estate, the payment of debts and legacies, and to take care of personal property. They were not trustees created by a will within the meaning of the statute.

"An executor is he to whom the execution of a last will and testament of personal estate is by the testator's appointment confided." (Toller on Executors, 30; *Wood* v. *Brown*, 34 N. Y., 342; *Bogert* v. *Hertell,* 4 Hill, 492; *Stagg* v. *Jackson*, 1 N. Y., 206; *In the Matter of Wadsworth*, 2 Barb. Ch., 381; *Conklin* v. *Egerton's Administrator*, 21 Wend., 430; *Craig* v. *Craig*, 3 Barb. Ch., 76; *Tucker* v. *Tucker*, 4 Keyes, 151.) A trustee created by a will is a different character from one whom the law converts into a trustee by his own inequitable conduct. But the executors have never rendered any account, nor been required to account for the purchase of the real estate. They objected to the jurisdiction of the surrogate to try this matter, and he never undertook to try it. He seems to have acted upon the objection made by the executors, that he had no jurisdiction over the matter of the sheriff's sale of the lands, and dismissed the subject for want of jurisdiction. This will not bar the plaintiff's present suit. (*Smith* v. *Adams*, 24 Wend., 585.)

As to the kind of relief proper in this case, I think the sheriff's sale may be allowed to stand, and the purchasers made to pay the difference between their bid and the value of the premises,

with interest and costs. (*Colburn* v. *Morton*, 3 Keyes, 296.) If they elect so to do, and judgment is given accordingly, that the plaintiff have a lien on the premises to that amount and interest, and for such purpose; and that unless the said defendants, Solon M. N. Whitney, James F. Trott and Dexter R. Jerauld, pay the plaintiff such amount within sixty days after service of a copy of this judgment, the premises be sold by a referee appointed for the purpose, on condition that the amount of their bid at sheriff's sale, to wit $5,000, be the sum below which the same shall not be exposed to sale ; and whatever it shall bring above that amount be paid to the plaintiff to the extent of $5,000 and interest thereon, as settled in the judge's report and judgment to be entered therein, and the costs of this action, as specified in the findings of the court; and for any deficiency in the amount thus realized, to pay such costs and principal and interest to plaintiff, said Whitney, Jerauld and Trott be personally charged with payment of such costs, and in case of a surplus realized by such resale, over and above the sums above mentioned, the same be brought into court to abide further directions. If a surplus should so remain, it will be for the court to determine to whom it should be paid, considering the provision of the will, and the beneficiaries therein, as well as improvements made by the former purchasers, and used for hotel purposes. As they have had the use of the land since their purchase, they will not be entitled to interest on their bid; and their claim for any improvements must, under the circumstances, yield to the better equity of the plaintiff.

*E. C. Sprague*, for the appellants.

*Ellsworth & Potter*, for the respondent.

GILBERT, J. :

Upon well established principles of equity, all profit resulting from the purchase made by the defendants, inures to the benefit of the plaintiff. Whitney and Trott were precluded by the duty which they owed to the plaintiff, from purchasing on their own account; and the interest of Jerauld is affected by the same disability, because the purchase was a joint one, and he is charged as having been privy to the circumstances which invalidate the transaction. The reasons given in the opinion delivered at Special Term

are quite satisfactory on this point, and the rule on this subject is too familiar to justify discussion here.

The relief afforded by the decree may not be precisely adapted to the case, but as no objection to that has been raised on either side, the judgment will be affirmed with costs. A clause may be inserted in the judgment of affirmance, giving to the defendants a reasonable time to pay the money directed to be paid by them, and the same will be settled by GILBERT, J., on ten days' notice.

Present — MULLIN, P. J., SMITH and GILBERT, JJ.

Judgment affirmed, with costs.